UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ASHLEY Y.,[1]

                              Plaintiff,                DECISION AND ORDER

-vs-

                                                1:24-cv-00065-MAV

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

On January 17, 2024, Ashley Y. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 6 (Plaintiff); ECF No. 8 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 6] is denied. The Commissioner's motion [ECF No. 8] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Applications

Plaintiff filed her application for DIB on November 13, 2019, alleging disability beginning on October 15, 2018. Administrative Record ("AR") at 18,[2] ECF No. 5. Plaintiff claimed that she was disabled due to bipolar disorder, anxiety, ADHD, and Hashimoto thyroid. AR at 275. Plaintiff's claims were initially denied on May 12, 2020, and upon reconsideration on July 31, 2020. AR at 18.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff appeared via telephone for a hearing on September 8, 2022, before an Administrative Law Judge ("ALJ"). AR at 34. At the hearing, Plaintiff testified that she lives in an apartment with her infant child, drives every day, and shops for groceries around twice per week. AR at 39–40. Plaintiff worked approximately 20 hours a week as a cashier at Tops prior to having her baby, leaving work in May 2022 to go on paid family leave. AR at 44–45. Plaintiff explained that Tops still had a job for her, but she told them that she was not coming back to work. AR at 45. Plaintiff received mental health treatment at Horizon and saw a psychiatrist there once per month and a counselor every two weeks. AR at 43, 63–64.

A vocational expert ("VE") testified that a hypothetical individual of the same age, educational background, and work experience as Plaintiff, and with an RFC

---

[2] The page references from the transcript are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

identical to that which the ALJ ultimately found Plaintiff to have would not be able to perform any of Plaintiff's past relevant work. AR at 70–72. Nevertheless, the VE determined that jobs existed in significant numbers in the national economy that a person similarly situated to Plaintiff could perform. AR at 72–73.

### III. The ALJ's Decision

On December 28, 2022, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 28.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[3] through December 31, 2023. AR at 20. Then, at step one of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2018, the alleged disability onset date. AR at 20–21.

---

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has established a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

At step two, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder, anxiety disorder, and major depressive disorder.[5] AR at 21. The ALJ found the following conditions to be non-severe: autoimmune thyroiditis, hypothyroidism, hypertension, and alcohol/substance abuse. AR at 21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 21. Also at this step, the ALJ assessed whether Plaintiff's mental impairments satisfied the "Paragraph B" criteria[6] and found that Plaintiff had a moderate limitation with "understanding, remembering, or applying information;" a moderate limitation with "interacting with others"; a moderate limitation with "concentrating, persisting, or maintaining pace"; and a moderate limitation with "adapting or managing oneself."

---

[5] Under 20 C.F.R. § 404.1521, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."

[6] When a claimant alleges mental impairments in support of their claim of disability, the ALJ must supplement steps two and three of the standard five-step analysis with what is known as the "special technique." See 20 C.F.R. § 416.920a; see Nedzad O. v. Comm'r of Soc. Sec., 577 F. Supp. 3d 37, 44 (N.D.N.Y. 2021). This technique requires the ALJ to determine first whether the claimant has a "medically determinable mental impairment." Nedzad O., 577 F. Supp. 3d at 44.
    If the claimant is found to have such an impairment, the ALJ must rate the degree of functional limitation resulting from the impairment(s) across four broad functional areas, known as "Paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c); 20 C.F.R. Part 404, Subpart B, Appendix 1 §§ 12.00(E)(1)–(4); see also Nedzad O., 577 F. Supp. 3d at 44.
    Based on the record, the ALJ must make a finding as to the degree of any limitations in each functional area, using assessments of "none," "mild," "moderate," "marked," and "extreme," see 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c), which in turn informs whether the ALJ deems the mental impairment "severe" or "non-severe," see id. §§ 404.1520a(d)(1), 416.920a(d). "To satisfy the 'Paragraph B' criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria." Monica L. v. Comm'r of Soc. Sec., No. 19-cv-1435, 2021 WL 630909, at *4 (W.D.N.Y. Feb. 18, 2021).

AR at 21–22. Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the "Paragraph B" criteria were not satisfied. AR at 22.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity[7] ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> she can understand, remember and carry out simple and routine instructions and tasks; she is able to work in a low stress work environment reflected by simple work, no supervisory duties, no independent decision-making, no strict production quotas as with assembly line work or codependent work with other workers and minimal changes in work routine and processes; she can maintain attention and concentration in two hour increments for simple, unskilled work; she can maintain regular attendance and tolerate ordinary levels of supervision for simple unskilled work; she can occasionally interact with supervisors, co-workers and the general public but no team or tandem work.

AR at 22.

At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work. AR at 26. However, at step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR at 27. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR at 28.

On November 23, 2023, the Appeals Council denied Plaintiff's request to

---

[7] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for disability benefits has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is

disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks and citation omitted).

## DISCUSSION

In Plaintiff's motion for judgment on the pleadings, she first argues that certain treatment records were missing from the record and that the ALJ failed to develop the record. ECF No. 6–1 at 9–12. Second, Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of Angela Roche, Plaintiff's treating

psychiatric nurse practitioner, and Dr. Janine Ippolito, Psy.D., a consultative examiner. *Id.* at 12–16.

Commissioner responds that the ALJ sufficiently developed the record, *see* ECF No. 8-1 at 9–13, and the ALJ properly assessed the medical opinion evidence, *id.* at 14–17. The Court agrees with the Commissioner.

## I. Sufficiency of the administrative record

Plaintiff first argues that the ALJ erred by failing to obtain a full treatment record. ECF No. 6-1 at 9. In Plaintiff's view, while the administrative record contained numerous medical records from Horizon Health Services ("Horizon"), the ALJ was on notice that other records from Horizon existed but were absent from the administrative record. *Id.* at 9–10. Despite the allegedly obvious gaps in the record, Plaintiff asserts that the ALJ "did nothing to obtain the treatment notes" and, therefore, failed in his duty to affirmatively develop the record. *Id.* at 11–12.

The ALJ is "responsible for developing [a claimant's] complete medical history . . . and making every reasonable effort to help [a claimant] get medical reports from [their] own medical sources." 20 C.F.R. § 404.1545(a)(3) (citing §§ 404.1512(d) through (e)); *see* 42 U.S.C. § 423(d)(5)(B). The ALJ's duty to develop the record reflects "the essentially non-adversarial nature of a benefits proceeding[,]" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotations marks omitted), and exists "even when the claimant is represented by counsel or a paralegal." *Rivers v. Kijakazi*, No. 21-1935-cv, 2023 WL 2485467, at *1 (2d Cir. Mar. 14, 2023) (summary order) (internal quotation marks omitted). However, "where there are no obvious gaps in the

administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *see Rivers*, 2023 WL 2485467, at *1. "[An] ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (internal quotation marks and brackets omitted).

To the extent there were gaps in the administrative record, the ALJ properly discharged his duty to develop the record "by providing Plaintiff's counsel the opportunity to obtain and submit evidence." *Michelle K. v. Comm'r of Soc. Sec.*, No. 21-cv-1295, 2024 WL 1856857, at *16 (W.D.N.Y. April 29, 2024); *Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp 2d 297, 330 (S.D.N.Y. 2010) ("Courts do not necessarily require ALJs to develop the record by obtaining additional evidence themselves, but often permit them to seek it through the claimant or his counsel."). In other words, Plaintiff's counsel "had more than enough time to obtain any missing records and to submit them." *Nichole T. v. Comm'r of Soc. Sec.*, No. 23-cv-0180, 2024 WL 3378109, at *3 (W.D.N.Y. July 11, 2024).

At the hearing on September 8, 2022, Plaintiff's counsel advised that they were awaiting updated treatment records from Community Health Center of Buffalo and Horizon. AR at 37. The ALJ informed Plaintiff and her counsel that he would keep the record open for an additional two weeks so that Plaintiff could submit the additional records or request his involvement in obtaining the records. AR at 37–38.

9

It appears that Plaintiff filed records from Community Health Center of Buffalo on September 21, 2022. AR at 879. Through a letter dated September 22, 2022, Plaintiff's counsel requested an extension of two weeks to obtain updated records from Horizon. AR at 380–81. After the deadline passed without the submission of the additional records or a request for additional time, the ALJ advised Plaintiff's counsel through a letter dated November 1, 2022, that counsel had ten more days to submit the additional evidence, request additional time, or explain why the additional evidence could not be submitted. AR at 382. The ALJ warned that he would make a decision on the available evidence if Plaintiff failed to advise on status or submit the records. On November 15, 2022, Plaintiff filed additional records from Horizon, *see* AR at 1057, which the ALJ ultimately considered in his decision, *see* AR at 24–26. It appears from the record that neither Plaintiff nor counsel indicated that they needed any additional time or assistance from the ALJ to obtain any more records from Horizon.

Under these facts, the ALJ properly discharged his duty to develop the administrative record. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542 (2d Cir. 2005) (finding no error to develop the record where claimant's counsel volunteered to obtain medical records, the ALJ kept the record open to allow for supplementation of the record, and the claimant did not request the ALJ's assistance in securing additional evidence); *Perry v. Saul*, 2020 WL 5544347, at *5 (W.D.N.Y. Sept. 16, 2020) (finding the ALJ properly developed the record where the ALJ agreed to hold the record open to allow the attorney to submit additional records, but the attorney neither submitted the records nor sought the ALJ's assistance in obtaining the

records); *cf. Petersen v. Comm'r of Soc. Sec.*, No. 18-cv-6143, 2019 WL 2051650, at *4 (W.D.N.Y. May 9, 2019) ("[T[he ALJ never took any independent steps to develop the record. He did not attempt to obtain the records himself *or even follow up with the representative to determine the status of the request or warn him that a decision would be made without the records.*") (emphasis added).

Additionally, the ALJ was not required to develop the record any further "since the evidence already presented [was] adequate for the ALJ to make a determination as to disability." *Janes*, 710 F. App'x at 34 (internal quotation marks omitted). Here, the administrative record contained numerous pages of records from Horizon detailing Plaintiff's mental health history. *See e.g.*, AR at 521–22, 529–30, 538–46, 723–26, 843–45, 1111–13, 1126–27. The ALJ relied upon specific Horizon records in crafting Plaintiff's RFC, such as unremarkable mental health status examinations which detailed appropriate dress, cooperative attitude, appropriate behavior, normal motor activity, coherent verbal expression, logical thought process, intact memory, and adequate concentration (*see* AR at 24 (citing AR at 816–17, mental status exam from 8/7/19; AR at 1109–11, mental status exam and notes from 3/22/22)); evidence of mental health improvements while on medication (*see* AR at 24 (citing AR at 1127, Horizon record from 10/31/21; AR at 875, note from NP Roche on 5/31/22)); and a medical opinion from Dr. Ippolito, which the ALJ found "somewhat persuasive" because the record supported a finding that Plaintiff could perform simple, unskilled work (*see* AR at 25 (citing AR AT 673, psychiatric evaluation dated 2/21/20)). Accordingly, the administrative record contained sufficient evidence from which the

ALJ could assess Plaintiff's mental functioning on a longitudinal basis and make a disability determination. *See Christine D. v. Comm'r of Soc. Sec.*, No. 20-cv-035, 2021 WL 2042430, at *5 (W.D.N.Y. May 21, 2021) ("[T]he record before the ALJ sufficiently documented Plaintiff's mental impairments and treatment, and the ALJ sufficiently articulated the record support for the RFC finding, including citing several objective findings to support the RFC finding . . . [and] [a]ccordingly, the ALJ was not obligated to seek out additional records."); *see also Janes*, 710 F. App'x at 34.

In short, the Court finds that the ALJ properly developed the record. Additionally, the record before the ALJ contained sufficient evidence to allow him to properly assess Plaintiff's RFC.

## II. Assessment of Medical Opinions

Plaintiff contends that the ALJ improperly evaluated the medical opinions of NP Roche and Dr. Ippolito. ECF No. 6-1 at 13–16. With respect to NP Roche, Plaintiff asserts that "[w]ithout the underlying complete treatment record, the ALJ could not possibly properly evaluate NP Roche's treating opinion pursuant to the regulatory factors, which require the ALJ to consider both how the opinion is supported by, and consistent with, the record." *Id.* at 14. With respect to Dr. Ippolito, Plaintiff argues that (1) the ALJ erred by failing to recognize the consistency between Dr. Ippolito's restrictive limitations and NP Roche's treating opinion, *id.* at 14–15, (2) the ALJ could not assess Dr. Ippolito's opinion without having the full treatment record, *id.* at 15–16, and (3) the ALJ's reasoning for rejecting Dr. Ippolito's restrictive limitations was improperly focused on Plaintiff's supposedly robust daily activities, *id.* at 16. The

12

court disagrees and concludes that the ALJ properly assessed the opinions of NP Roche and Dr. Ippolito.

### A. Legal Principles

Since Plaintiff filed her application in 2019, the Commissioner was required to apply 20 C.F.R. §§ 404.1520c to evaluate the medical opinion evidence in the record. *See Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 148 (2d Cir. 2024). Pursuant to this regulation, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a);[8] *see Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024) ("[T]he Commissioner owes no special deference to any particular medical opinion in the record.").

Rather, the Commissioner must evaluate the persuasiveness of each medical opinion using the factors listed in § 404.1520c(c)(1)-(5). *See* 20 C.F.R. § 404.1520c(a). "[T]he most important [factors] are 'supportability' (how well supported an opinion is by medical evidence and the explanations given in the opinion) and 'consistency' (how consistent an opinion is with other evidence in the record)." *Spottswood*, 2024 WL 89635, at *1; *see* 20 C.F.R. § 404.1520c(c)(1),(2). An ALJ must explain how they considered the supportability and consistency of the medical opinions and "[they]

---

[8] "Until March 27, 2017, the regulations required the ALJ to give 'controlling weight' to the opinion of the applicant's treating physician, subject to certain qualifications and exceptions. *See id.* § 404.1527(c)(2). But that rule has been revoked, and for applications . . . filed on or after March 27, 2017, the treating physician's opinion is no longer given special deference, and the medical evidence is to be weighted according to the criteria discussed above." *Rubin*, 116 F.4th at 148 n.3.

13

may, but are not required to, explain how [they] considered the [other] factors." 20 C.F.R. § 404.1520c(b)(2); *see Porteus v. O'Malley*, No. 23-969, 2024 WL 2180203, at *1 (2d Cir. May 15, 2024); *Villier on behalf of N.D.D.R. v. Com'r of Soc. Sec.*, No. 23893-CV, 2024 WL 2174236, at *2 (2d Cir. May 15, 2024).

### B. NP Roche's Opinion

In assessing Plaintiff's RFC, the ALJ explained that he considered a report from NP Roche dated September 2022, which he ultimately found not persuasive. AR at 25. The ALJ summarized NP Roche's findings, as follows:

> the claimant is not able to maintain attention for two hour segment, maintain regular attendance and be punctual within customary, usually strict tolerances, get along with co-workers or peers and understand, remember and carry out detailed instructions. She further opined the claimant is seriously limited in her ability to sustain an ordinary routine and complete a normal work day but she is able to understand and remember very short and simple instructions, carry out very short and simple instructions, work in coordination with or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance and accept instructions and respond appropriately to criticism from supervisors. Moreover, nurse practitioner Roche reported the claimant would be absent at least four days per month.

AR 25 (citing AR at 1066–1070). The ALJ found that NP Roche's opinion was "not supported by the evidence of the record" because: (1) Plaintiff was able to attend regular scheduled appointments without any reminders or any other issues and get along with her therapist, (2) Plaintiff's mental health examinations revealed that she was cooperative and friendly during sessions; and (3) Plaintiff was able to adhere to a scheduled environment in her personal life and at work. AR at 25–26 (citing AR at 34–77 (transcript of hearing); 447–549 (Horizon records), 790–878 (Horizon records),

14

1057–1132 (Horizon records)).

Plaintiff's lone contention here is that the ALJ could not have properly evaluated NP Roche's treating opinion pursuant to the regulatory factors without the underlying complete treatment record. ECF No. 6-1 at 14. This contention is without merit. As discussed above, the administrative record was adequate for the ALJ to make his disability determination and, accordingly, it follows that the ALJ was able to assess NP Roche's opinion against the record evidence to evaluate the persuasiveness of the opinion.[9] Additionally, the ALJ adequately explained how he considered the supportability and consistency of NP Roche's opinion. With respect to supportability, the ALJ explained that the Horizon records did not support the additional restrictive limitations assessed by NP Roche. AR at 25. The ALJ also explained that the other evidence in the record, such as Plaintiff's testimony that she worked part-time at Tops, were inconsistent with NP Roche's opinion.

### C. Dr. Ippolito's Opinion

In addition to considering NP Roche's opinion, the ALJ also evaluated an opinion from Dr. Ippolito that was dated February 2020. AR at 20. The ALJ ultimately found Dr. Ippolito's opinion to be "somewhat persuasive." AR at 25. The ALJ summarized Dr. Ippolito's findings, as follows:

> [t]he claimant presents as able to understand, remember, and apply [s]imple and complex directions and instructions, interact adequately with supervisors, coworkers, and the public, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and demonstrate awareness of normal hazards and take appropriate precautions with no evidence of limitations. She can

---

[9] Plaintiff asserts the same contention with respect to the ALJ's assessment of Dr. Ippolito's opinion. *See* ECF No. 6-1 at 15–16. The Court rejects the argument for the same reasons.

15

> sustain concentration and perform a task at a consistent pace with mild limitations. She can use reason and judgment to make work related decisions with moderate limitations. She can regulate emotions, control behavior, and maintain well-being with moderate to marked limitations.

AR at 25 (citing AR at 674). The ALJ concluded that Dr. Ippolito's opinion was "not entirely supported by the evidence of the record" because while the record supported a finding that Plaintiff could engage in simple, unskilled work, there was no record support for moderate to marked limitations regulating Plaintiff's emotions, controlling her behavior, and maintaining her well-being. *Id.* The ALJ cited the following evidence in support of his conclusion: (1) Plaintiff was able to spend a typical day attending her counseling appointments and exercising, among other activities, without any problems; (2) Plaintiff's mental health treatment records demonstrated that she was able to engage in intense counseling without any problems; (3) Plaintiff transitioned from supervised living to living alone and taking care of her baby; and (4) Plaintiff maintained employment from 2021 through the first quarter of 2022 and stopped working only because of her pregnancy. *Id.* (citing AR at 34–77 (transcript of hearing), 447–549 (Horizon records); 673 (Dr. Ippolito's opinion); 790–878 (Horizon records); 1057–1132 (Horizon records)).

With regard to Plaintiff's contention that the ALJ erred by failing to recognize the consistency between Dr. Ippolito's restrictive limitations and NP Roche's opinion, the Court finds the argument to be without merit. Assuming, *arguendo*, that Dr. Ippolito's restrictive limitations were consistent with NP Roche's treating opinion and the ALJ failed to consider the consistency between them, there was no error inasmuch as the "consistency" factor under 20 C.F.R. § 404.1520c(c)(2) requires "an all-

16

encompassing inquiry focused on how well a medical source is supported, or not supported, *by the entire record.*" *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-cv-0502, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) (emphasis added), *report and recommendation adopted*, 2022 WL 717612, at *1 (S.D.N.Y. Mar. 10, 2022). Here, "the ALJ properly considered the consistency of the opinions in relation to the record as a whole, and was not obligated to specifically compare those opinions with each other." *Laura K. v. Comm'r*, No. 23-cv-641, 2025 WL 339006, at *5 (W.D.N.Y. Jan. 30, 2025). Indeed, the ALJ's RFC conclusion need not even "perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence," *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022), which the Court finds that it is.

Lastly, the Court rejects Plaintiff's contention that the ALJ improperly relied on Plaintiff's supposedly robust daily activities and part-time work to discount Dr. Ippolito's opinion as to restrictive limitations. *See Wilbert D. v. Comm'r of Soc. Sec.*, No. 20-cv-1318, 2022 WL 3320826, at *6 ("To the extent plaintiff maintains that the ALJ placed undue reliance on his daily activities in evaluating the medical opinions or in formulating his RFC . . . I disagree. Review of the ALJ's decision demonstrates that she properly formulated plaintiff's RFC based upon her review of the entire record as a whole, including his extensive daily activities.") (collecting cases); *Georgiana W. v. Comm'r of Soc. Sec.*, No. 20-cv-6051, 2021 WL 2809553, at *10 (W.D.N.Y. July 6, 2021) ("[I]t was not improper for the ALJ to consider plaintiff's reported ability to engage in the activities of daily living . . . when weighing the opinion evidence") (collecting cases).

Not only did the ALJ properly consider Plaintiff's daily activities in evaluating the consistency of Dr. Ippolito's opinion, but he also considered treatment records showing that Plaintiff was able to engage in counseling without any noted problems. AR at 25 (citing Horizon records, AR at 447–549, 790–878, 1057–1132). The ALJ also adequately explained the supportability of Dr. Ippolito's opinion, referencing findings from Dr. Ippolito's psychiatric evaluation of Plaintiff. AR at 25. In sum, the ALJ properly evaluated these medical opinions relating to Plaintiff's mental health impairments and reached an RFC assessment supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings [ECF No. 6] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 8] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:   March 31, 2025
         Rochester, New York

_____
HON. MEREDITH A. VACCA
United States District Judge